UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KIMBERLEY MCQUEARY-LAYNE

CIVIL ACTION

VERSUS

LOUISIANA STATE BOARD OF
NURSING ET AL.

NO.: 18-632-BAJ-RLB

RULING AND ORDER

Before the Court are two motions: a **Motion to Dismiss (Doc. 18)** filed by the Louisiana State Board of Nursing, Wanda Matthews, and Sharetha Brown; and a **Motion to Dismiss (Doc. 19)** filed by Carrie LeBlanc Jones. For the reasons that follow, the **Motions (Docs. 18, 19)** are **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

This dispute arises from Board of Nursing disciplinary proceedings culminating in the suspension of *pro se* Plaintiff Kimberley McQueary-Layne's nursing license. (Docs. 1, 8).

Dissatisfied with the proceedings, McQueary-Layne sued all involved: the Board of Nursing; its lawyer, Carrie LeBlanc Jones; its compliance investigator, Sharetha Brown; and its hearing officer, Wanda Matthews. (Doc. 8). She alleges that Defendants violated her constitutional rights by "accus[ing] her of heinous

1

allegations," "subject[ing] [her] to humiliation and mockery by a prejudiced jury," and "withhold[ing] exculpatory evidence." (*Id.* at pp. 2–3). She also alleges that Defendants defamed her and violated Louisiana's Administrative Procedure Act. (Doc. 1 at p. 2; Doc. 8 at p. 2). She seeks damages and "judicial review" of the Board of Nursing disciplinary proceedings. (Doc. 8 at pp. 6–7).

Defendants move to dismiss Plaintiff's claims for lack of subject-matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docs. 18, 19). Plaintiff opposes. (Doc. 23).

## II. LEGAL STANDARDS

### A. Subject-Matter Jurisdiction

The Court must dismiss a claim if it lacks the statutory or constitutional power to adjudicate the claim. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). To decide if it has jurisdiction over a claim, the Court may consider the complaints, the complaints supplemented by undisputed facts in the record, or the complaints supplemented by the undisputed facts and the Court's resolution of the disputed facts. *See Gonzalez v. United States*, 851 F.3d 538, 543 (5th Cir. 2017).

### B. Failure to State a Claim

To overcome Defendants' Rule 12(b)(6) motions, Plaintiff must plead plausible claims for relief. *See Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible if it is

2

pleaded with factual content that allows the Court to reasonably infer that Defendants are liable for the misconduct alleged. *See Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678). The Court accepts as true the well-pleaded facts of Plaintiff's complaints and views those facts in the light most favorable to Plaintiff. *See Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

### III. DISCUSSION

Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiff's claims and that Plaintiff's complaints fail to state plausible claims for relief. (Docs. 18, 19). The Court considers jurisdiction before turning to the merits. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 286.

#### A. Subject-Matter Jurisdiction

Defendants argue that the Court lacks subject-matter jurisdiction over Plaintiff's official-capacity claims because Defendants enjoy immunity under the Eleventh Amendment.[1] (Docs. 18-1 at p. 4; 19-1 at p. 5). Defendants argue, in the alternative, that the Court should decline jurisdiction over Plaintiff's individual-capacity claims because this case presents "exceptional circumstances" justifying abstention under *Younger v. Harris*, 401 U.S. 37 (1971) or *Colorado River Water*

---

[1] The Court recognizes that "Eleventh Amendment immunity" is a misnomer. *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240–241 (5th Cir. 2005). But because the label is useful, and because courts continue to use it, the Court does the same.

3

*Conserv. Dist. v. United States*, 424 U.S. 800 (1976). (Docs. 18-1 at pp. 10–13; 19-1 at pp. 7–10).

1. **Eleventh Amendment Immunity**

The Eleventh Amendment prohibits Plaintiff from suing the State of Louisiana in federal court unless Louisiana has waived its sovereign immunity or Congress has "expressly abrogated" it. *See Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). Louisiana has not waived its sovereign immunity, *see* LA. R.S. 13:5106(A), and Congress has not "expressly abrogated" it. *See Raj*, 714 F.3d at 328.

Sovereign immunity also protects "arms" of the State. *Id.* The reason for extending immunity is that the "state agency is so closely connected to the State that the State itself is 'the real, substantial party in interest.'" *Vogt v. Bd. of Com'rs of Orleans Levee Dist.*, 294 F.3d 684, 689 (5th Cir. 2002) (quoting *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999)).

The Board of Nursing argues that it enjoys sovereign immunity as an arm of the State of Louisiana. (Doc. 18-1 at p. 4). Matthews, Brown, and Jones contend that they, too, enjoy sovereign immunity. (Docs. 18-1, 19-1). They reason that because the Board of Nursing is an arm of the State of Louisiana, and because Plaintiff has sued them in their official capacity as employees or agents of the Board of Nursing, an official-capacity claim against them is a claim against the State. (Docs. 18-1 at p. 9; 19-1 at p. 5). Because their entitlement to immunity turns on the Board of Nursing's entitlement to immunity, the Court considers the Board of Nursing first.

4

To decide if the Board of Nursing is an arm of the State of Louisiana that enjoys sovereign immunity, the Court considers (1) whether Louisiana law views the Board of Nursing as an arm of the State, (2) the source of the Board of Nursing's funding, (3) the Board of Nursing's degree of local autonomy, (4) whether the Board of Nursing is concerned primarily with local rather than statewide problems, (5) whether the Board of Nursing can sue and be sued in its own name, and (6) whether the Board of Nursing has the right to hold and use property. *See Providence Behavioral Health v. Grant Road Pub. Util. Dist.*, 902 F.3d 448, 456 (5th Cir. 2018).

The first factor asks whether Louisiana law views the Board of Nursing as an arm of the State. *See id.* at 456. It does. The statute that created the Board of Nursing places it "within the Department of Health," and the Department of Health is an agency within the executive branch. *See* LA. R.S. 37:914(A). And at least one court has found that the Board of Nursing is an arm of the State of Louisiana. *See Rodgers v. State Bd. of Nursing*, No. 15-CV-615-JJB-SCR, 2015 WL 9274930, at *6 (M.D. La. Dec. 18, 2015), *aff'd by* 665 F. App'x 326 (5th Cir. 2016) (per curiam).

The second factor, source of funding, is "the most important one." *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 320 (5th Cir. 2001). It is neutral. The Board of Nursing self-funds through fees it collects. (Doc. 18-1 at p. 6). But the Board of Nursing's fees and budget are subject to audits by the executive branch. *See* LA. R.S. 36:803(A)(3). So the State of Louisiana retains some control over the Board of

5

Nursing's funding. *See Williams*, 242 F.3d at 321 (holding that audit requirements are "some evidence of state oversight" but are "not dispositive").[2]

The third factor considers the Board of Nursing's autonomy. *See Providence Behavioral Health*, 902 F.3d at 456. It too is neutral. The State created the Board of Nursing. *See* LA. R.S. 37:914(A). And the State regulates some aspects of the Board of Nursing—for example, its composition and the tenure of its members. *See* LA. R.S. 37:914(B). But the State has limited control over the selection of board members because the Governor appoints members based on a "list of names submitted by certain associations." (Doc. 18-1 at p. 7).

The fourth factor asks whether the Board of Nursing is concerned with local or statewide problems. *See Providence Behavioral Health*, 902 F.3d at 456. It favors immunity because the Board of Nursing regulates nursing statewide. *See* LA. R.S. 37:911; *Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) (reasoning that a district attorney was a state official entitled to Eleventh Amendment immunity because state law extended his authority to statewide concerns).

The fifth factor, ability to sue and be sued, is neutral. *See Hudson*, 174 F.3d at 691 (factor counts against immunity if entity can sue and be sued). It is not clear whether the Board of Nursing can sue and be sued in its own name: the statute

---

[2] The Board of Nursing fails to address whether a judgment against it would be paid out of the State of Louisiana's treasury. That is troubling—the Fifth Circuit considers the question "[m]ost important[]" in the Eleventh Amendment immunity analysis. *Hudson*, 174 F.3d at 691.

creating the Board of Nursing is silent on the point. *See* LA. R.S. 37:914. If the legislature intended to grant the Board of Nursing the power to sue and be sued, it could have used language reflecting that intent. *See* LA. R.S. 37:1361(C) (plumbing board "may sue and be sued"); LA. R.S. 37:2161 (board of contractors "may sue and be sued").

The sixth and final factor disfavors Eleventh Amendment immunity because the Board of Nursing has the right to hold and use property. *See* LA. R.S. 37:918(20).

In sum, two factors favor Eleventh Amendment immunity, one factor disfavors it, and three factors are neutral. Although it is a close call, the Court finds that the Board of Nursing is an arm of the State of Louisiana and that a suit against the Board of Nursing is "in reality a suit against the state itself." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 327 (5th Cir. 2002).

As an arm of the State of Louisiana, the Board of Nursing enjoys Eleventh Amendment immunity. *See id.* at 326. Because the Board of Nursing enjoys Eleventh Amendment immunity, the Court lacks jurisdiction over Plaintiff's claims against it. *See id.* at 333. The Court therefore grants the Board of Nursing's motion to dismiss Plaintiff's claims against it for lack of subject-matter jurisdiction, dismisses those claims *without* prejudice, and turns to Matthews's, Brown's, and Jones's Eleventh Amendment immunity defenses.[3]

---

[3] The *Ex Parte Young* exception to Eleventh Amendment immunity does not apply because Plaintiff does not appear to be seeking prospective injunctive relief. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015).

An official-capacity suit against a state officer is considered a suit against the state. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017). Because the Court has concluded that a suit against the Board of Nursing is a suit against the State of Louisiana, it follows that an official-capacity suit against a Board of Nursing official is also a suit against the State of Louisiana, barred by Eleventh Amendment immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).

Matthews, Brown, and Jones are Board of Nursing officials. (Doc. 8). Plaintiff sues them for their role—as hearing officer, compliance investigator, and attorney, respectively—in the Board of Nursing disciplinary proceeding that led to the suspension of her nursing license. (*Id.*). So they enjoy Eleventh Amendment immunity from, and the Court lacks jurisdiction over, Plaintiff's official-capacity claims. *See Pennhurst*, 465 U.S. at 101. The Court therefore grants their motions to dismiss Plaintiff's official-capacity claims for lack of subject-matter jurisdiction and dismisses those claims *without* prejudice. The Eleventh Amendment does not bar any individual-capacity claims against Matthews, Brown, and Jones. *See Lewis*, 137 S. Ct. at 1291.

Viewing only Plaintiff's complaints, it is difficult to discern whether she intends to sue Matthews, Brown, and Jones in their individual capacities. (Docs. 1, 8). That is because her complaints are largely incoherent. (*Id.*). The coherent bits, though, target acts Matthews, Brown, and Jones performed in their official capacities during Board of Nursing disciplinary proceedings. (*Id.*). Still, the Court looks to the "course of proceedings" to determine the "nature of the liability" Plaintiff aims to

impose. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Those "proceedings" indicate that Plaintiff intends to bring individual-capacity claims against Matthews, Brown, and Jones; indeed, Plaintiff says so in her opposition to Defendants' motions to dismiss. (Doc. 23 at pp. 5–6). So the Court considers whether Plaintiff's individual-capacity claims withstand Defendants' motions.

### 2. Abstention

The Court has a "virtually unflagging obligation" to exercise the jurisdiction given it. *Colorado River*, 424 U.S. at 817. But it may, in "exceptional circumstances," decline jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013).

Defendants argue that this case presents "exceptional circumstances" justifying abstention under *Younger* or *Colorado River*. (Docs. 18-1, 19-1). In support, they point to a state-court suit that parallels this one. (Doc. 18-2). In that suit, as in this one, Plaintiff seeks "*de novo* judicial review" of the Board of Nursing's order suspending her nursing license. (*Id.*). The Court considers whether that action requires the Court to decline to adjudicate this one.

#### a. *Younger*

*Younger* abstention applies to three types of state proceedings: (1) ongoing criminal prosecutions, (2) civil enforcement proceedings akin to criminal

9

prosecutions, and (3) civil proceedings "uniquely in furtherance of the state courts' ability to perform their judicial functions."[4] *Sprint Commc'ns, Inc.*, 571 U.S. at 73.

Plaintiff's state suit does not fit into any of these "exceptional categories." *See Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016). It is a civil suit seeking damages; it is neither a criminal prosecution nor a civil enforcement proceeding akin to one. (Doc. 18-2). It is not a civil proceeding "uniquely in furtherance of" the state courts' ability to perform their judicial functions, either.[5] *See Boerschig v. Trans-Pecos Pipeline, L.L.C.*, 872 F.3d 701, 705 n.2 (5th Cir. 2017) (exploring the limits of this category). It is a garden-variety 42 U.S.C. § 1983 suit. (Doc. 18-2).

Because Plaintiff's state suit is not an ongoing state proceeding fitting one of *Younger*'s three categories, *Younger* abstention is inappropriate.[6] *See Google, Inc.*, 822 F.3d at 223.

---

[4] Defendants skip this step of the *Younger* analysis. (Doc. 18-1 at p. 11). It is only after a court concludes that a state-court proceeding fits into one of the three "exceptional categories" that it "appropriately considers" whether the state-court proceeding (1) is ongoing, (2) implicates important state interest, and (3) provides an adequate opportunity to raise federal challenges. *See Google, Inc.*, 822 F.3d at 222.

[5] The *Sprint* Court cited two cases as exemplary of this third category: *Judice v. Vail*, 430 U.S. 327 (1977) and *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987). *Judice* involved a challenge to a civil contempt order. 430 U.S. at 335–336. *Pennzoil* involved a challenge to the execution of a state-court judgment pending appeal of that judgment to a state appellate court. 481 U.S. at 3.

[6] As purported support for their position, Defendants cite *Geotes v. Miss. Bd. Of Veterinary Medicine*, 986 F. Supp. 1028 (S.D. Miss. 1997). That case fails to persuade: it was decided over 15 years before the Supreme Court clarified *Younger*'s limits in *Sprint*. *See* 571 U.S. 69.

### b. *Colorado River*

*Colorado River* abstention allows the Court to decline jurisdiction over a federal suit that parallels a state suit under "exceptional circumstances." *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 (1983). The analysis "begins with a heavy thumb on the scale in favor of exercising federal jurisdiction[.]" *Aptim Corp. v. McCall*, 888 F.3d 129, 135 (5th Cir. 2018). To decide if "exceptional circumstances" justify abstention, the Court considers six factors:

> (1) assumption by either court of jurisdiction over a *res*, (2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums; (5) to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Id.* at 135–136 (citation omitted).

The first factor disfavors abstention. Plaintiff seeks a judgment against three individuals and one entity, not a determination of title to property; so there is no *res*. *See id.* at 136.

The second factor also disfavors abstention. The state and federal courthouses are in Baton Rouge—the "same geographic location." *See Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir. 2006).

The third factor is neutral. Plaintiff's federal complaint appears to raise the same issues as her state-court complaint. (Docs. 1, 8, 18-2). So there is a risk of duplicative litigation. Preventing duplicative litigation, though, "is *not* a factor to be considered in an abstention determination." *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d

1185, 1192 (5th Cir. 1988) (emphasis added). The "real concern" is the "danger of inconsistent rulings with respect to a piece of property." *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650–651 (5th Cir. 2000). That concern is not present here.

The Court cannot evaluate the fourth factor because the parties' briefs do not explain the procedural posture of Plaintiff's state suit. *See Stewart*, 238 F.3d at 492 ("The inquiry under this factor is how much progress has been made in the two actions.").

The fifth factor disfavors abstention. Plaintiff's complaints attempt to allege state-law torts and violations of the United States Constitution. (Docs. 1, 8). So federal law will, to a degree, "provide the rule of decision on the merits." *Aptim Corp.*, 888 F.3d at 136.

The sixth factor is neutral. Although no party has argued that the state court will inadequately protect its interests, this factor "can only be a neutral factor or one that weighs against, not for, abstention." *Evanston Ins. Co.*, 844 F.2d at 1193.

In sum, three of the *Colorado River* factors disfavor abstention and three are neutral. That showing fails to persuade the Court that it should apply this "extraordinary and narrow exception" to its "virtually unflagging obligation" to exercise its jurisdiction. *Colorado River*, 424 U.S. at 814. The Court declines to abstain under *Colorado River*.

Satisfied with its jurisdiction, the Court turns to the merits.

B. **Failure to State a Claim**

Jones and Matthews argue that Plaintiff fails to state a claim against them because they enjoy absolute immunity. (Docs. 18-1, 19-1). Brown argues that Plaintiff fails to state a claim against her because she enjoys qualified immunity and Plaintiff has not alleged facts to defeat the defense. (*Id.*). All three argue that they enjoy statutory immunity from Plaintiff's state-law claims. (*Id.*).

1. **Absolute Immunity**

Absolute immunity "denies a person whose federal rights have been violated by a government official any type of remedy, regardless of the conduct." *O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir. 1997). It protects state agents performing "quasi-judicial" functions. *See Beck v. Tex. State. Bd. of Dental Examiners*, 204 F.3d 629, 634 (5th Cir. 2000).

Jones and Matthews contend that they performed quasi-judicial functions when they participated in Plaintiff's disciplinary proceedings. (Docs. 18-1, 19-1). To decide if that is so, the Court considers six factors:

> (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal.

*Beck*, 204 F.3d at 634 (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)).

Applying those factors, the Court finds that Jones and Matthews performed quasi-judicial functions when they served as prosecuting attorney and hearing officer,

13

respectively, during Plaintiff's Board of Nursing disciplinary proceedings. *See O'Neal*, 113 F.3d at 67 (applying *Butz* factors and holding that members of state nursing board performed quasi-judicial functions).

First, it is essential that the Board of Nursing's prosecuting attorney and hearing officer "be allowed to perform their duties free from potential harassment or intimidation." *Id.* at 66. These officials must exercise independent judgment, and so doing requires freedom to make decisions without "the threat of incurring personal liability[.]" *Id.*

Second, Louisiana law provides safeguards that reduce the need for private damages suits. The accused has a right to appear with counsel, to produce witnesses and evidence on her own behalf, and to cross-examine witnesses. *See* LA. R.S. 37:922(D). The accused also retains the right to appeal the Board of Nursing's decision, *see* LA. R.S. 37:923, and to receive at least ten days' notice of the proceeding. *See* LA. R.S. 37:922(A).

Third, members of the Board of Nursing are insulated from political pressure because they are appointed—not elected—and serve staggered terms. *See* La. R.S. 37:914(B)–(C).

Fourth, although the record does not reflect whether the Board of Nursing follows precedent, "the absence of this factor is not dispositive." *Beck*, 204 F.3d at 636.

Fifth, Board of Nursing proceedings are adversarial in nature. The Board of Nursing may administer oaths and compel the attendance of witnesses and the

production of documents; the accused, on the other hand, may offer evidence, call witnesses, confront the witnesses against her, and appear with counsel. *See* LA. R.S. 37:922.

Sixth, Board of Nursing proceedings are correctable on appeal. *See* LA. R.S. 37:923 (granting aggrieved party a right to appeal a Board of Nursing decision to a "court of competent jurisdiction" within 30 days).

Five of the six *Butz* factors favor a finding that Jones and Matthews performed a quasi-judicial function when they participated in the Board of Nursing disciplinary proceedings. *See Butz*, 438 U.S. at 512. Because Jones and Matthews performed quasi-judicial functions when participating in the disciplinary proceedings, they are absolutely immune from liability for any claim arising from their participation in those proceedings. *See O'Neal*, 113 F.3d at 67. The Court therefore grants Jones's and Matthews's motions to dismiss Plaintiff's individual-capacity federal-law claims on absolute-immunity grounds and dismisses those claims *with* prejudice.[7]

### 2. Qualified Immunity

Plaintiff's complaints describe Brown as a Board of Nursing "compliance investigator." (Doc. 8 at p. 2). Brown argues that she enjoys qualified immunity because she is a state official and Plaintiff has sued her for acts attendant to Board of Nursing disciplinary hearings. (Doc. 18-1 at pp. 18–19).

---

[7] Because the Court finds that Jones and Matthews enjoy absolute immunity from Plaintiff's individual-capacity federal-law claims, amendment would be futile. *See, e.g., Banik v. Tamez*, No. 7:16-CV-462, 2017 WL 2888984, at *7 (S.D. Tex. July 7, 2017).

Because Brown has asserted qualified immunity, Plaintiff "bears the burden of pleading facts that demonstrate liability and defeat immunity." *Shaw v. Villanueva*, 918 F.3d 414, 416 (5th Cir. 2019). Plaintiff must allege facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* at 417 (internal quotation marks and citation omitted). She fails to do so.

Plaintiff's complaints contain no plausible allegations showing that Brown violated any clearly established statutory or constitutional right. (Docs. 1, 8). So Plaintiff fails to plead any plausible federal claim against Brown. *See Shaw*, 918 F.3d at 417. The Court therefore grants Brown's motion to dismiss Plaintiff's individual-capacity federal-law claims on qualified immunity grounds and dismisses those claims *without* prejudice.

Because it is unclear whether Plaintiff may plead facts sufficient to overcome Brown's qualified-immunity defense, the Court grants Plaintiff 14 days to amend her complaint to attempt to plead such a claim. *See* FED. R. CIV. P. 15(a). If Plaintiff fails to timely amend, the Court will dismiss the individual-capacity federal-law claims she purports to assert against Brown *with* prejudice.

3. **Statutory Immunity**

Jones, Matthews, and Brown argue that they enjoy statutory immunity under Louisiana Revised Statutes 37:931(B). (Docs. 18-1, 19-1). That provision shields from liability

16

any member of the board, its officers, employees, agents, or representatives for any action undertaken or performed by such individual within the scope of the duties, powers, and functions of the board when acting without malice and in the reasonable belief that the action taken is within the board's and such individual's authority.

La. R.S. 37:931(B).

Jones, Matthews, and Brown are either "member[s]," "officers," "employees," or "agents" of the Board of Nursing. *See id.* And Plaintiff's complaints seek to impose liability on them for "action undertaken or performed . . . within the scope of the duties . . . of the board." *Id.* So they enjoy immunity under Louisiana Revised Statutes 37:931(B) unless they failed to act (1) "without malice" or (2) "in the reasonable belief that the[ir] action[s]" were within theirs and the Board of Nursing's authority. *Id.*

Plaintiff's complaints contain no plausible allegations that Jones, Matthews, or Brown failed to act as Louisiana Revised Statutes 37:931(B) requires.[8] (Docs. 1, 8). So on the facts pleaded, Jones, Matthews, and Brown are statutorily immune from liability on Plaintiff's state-law claims. (*Id.*). The Court therefore grants Defendants' motions to dismiss Plaintiff's individual-capacity state-law claims and dismisses those claims *without* prejudice.

Because it is unclear whether Plaintiff may plead facts sufficient to overcome the statutory-immunity defense, the Court grants Plaintiff 14 days to amend her

---

[8] Plaintiff's allegation that an unidentified Defendant sent "false allegations" to a "national data base on a malicious basis" is conclusory and thus not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681.

17

complaint to attempt to plead such claims. *See* FED. R. CIV. P. 15(a). If Plaintiff fails to timely amend, the Court will dismiss her state-law claims *with* prejudice.

IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss (Doc. 18)** filed by the Louisiana State Board of Nursing, Wanda Matthews, and Sharetha Brown is **GRANTED**, in part, as follows: all of Plaintiff's claims against the Louisiana State Board of Nursing are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction; Plaintiff's official-capacity claims against Matthews and Brown are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction; Plaintiff's individual-capacity federal-law claims against Matthews are **DISMISSED WITH PREJUDICE** for failure to state a claim; Plaintiff's individual-capacity federal-law claims against Brown are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim; Plaintiff's individual-capacity state-law claims against Matthews and Brown are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. The **Motion (Doc. 18)** is otherwise **DENIED.**

**IT IS FURTHER ORDERED** that the **Motion to Dismiss (Doc. 19)** filed by Carrie LeBlanc Jones is **GRANTED**, in part, as follows: Plaintiff's official-capacity claims against Jones are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction; Plaintiff's individual-capacity federal-law claims against Jones are **DISMISSED WITH PREJUDICE** for failure to state a claim; Plaintiff's

individual-capacity state-law claims against Jones are **DISMISSED WITHOUT PREJUDICE**. The **Motion (Doc. 19)** is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff is granted **14 days** to amend her complaint to attempt to plead (1) a federal-law individual-capacity claim against Defendant Sharetha Brown; and (2) state-law individual-capacity claims against Jones, Matthews, and Brown. If Plaintiff fails to timely amend, the Court will dismiss Plaintiff's remaining claims *with* prejudice and enter judgment against her.

Baton Rouge, Louisiana, this 8th day of April, 2019.

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**